Allen, J.
 

 This case arises as an error proceeding to an order of the Public' Utilities Commission of Ohio, entered upon an application seeking the right to extend the ronte under certificate No. 91, of which the Central Ohio Lines, Inc., was owner
 
 *222
 
 and holder, from Xenia, one western terminus of such route, to Dayton, via Osborn, Ohio. Notice was given under the statute, and the matter was set for hearing. Various public utilities appeared as protestants, and at the hearing the protestants moved the commission to dismiss the application upon the ground of
 
 res judicata,
 
 urging that the Central Ohio Lines, Inc., was in fact a company owned and directed by Carl E. Fent; that Fent had previously made application for extension of certificate No. 91 over exactly the same route; that the commission had granted such extension (with a restriction which is of no moment here); and that this court had reversed the order granting this extension.
 

 The protestants also moved for dismissal of the application upon the ground that the existing transportation facilities in the territory proposed to be served by the applicant established that there was no public convenience and necessity for granting the application.
 

 The commission overruled the application to dismiss the proceeding upon the ground of
 
 res judicata,
 
 and proceeded to hear and to accept as evidence certain statements of counsel as to schedules of present operations between Xenia and Dayton by the Dayton & Xenia Railway Company and the Dayton-Xenia Motor Bus Company, the Pennsylvania Railroad Company, and the Cincinnati & Lake Erie Railway Company, all bearing upon the question of the present adequacy of service by the protestants between Xenia and Dayton. By stipulation of counsel for the applicant, these schedules were admitted as evidence.
 

 
 *223
 
 The material part of the ruling of the commission is as follows:
 

 “From the statement of counsel, it is quite manifest that there are transportation facilities between Xenia and Dayton, both by way of interurban company, which operates a schedule at considerable frequency and a bus operation between those two. points, also the Pennsylvania railroad which operates infrequent trains between those points. It is also disclosed by statement of counsel that there are considerable transportation facilities between the municipality of Osborn and the city of Dayton by way of Cincinnati & Lake Erie Interurban Company and a bus line operated by the present application [applicant] between those two points and also by way of the Big Four Railroad between Osborn and Dayton.
 

 “As to
 
 res adjudicata
 
 the commission is not prepared to say that the case
 
 (Dayton & Xenia Motorbus Co.
 
 v.
 
 Public Utilities Commission of Ohio)
 
 in 115 Ohio State, page 706, 156 N. E., 141, necessarily decides the case at bar for the reason that there may be differences in the present issues which would make the ruling in that court not the final decision in the present case. But the principles laid down in that case are conceded as controlling the commission in the determination of this case whether it be
 
 res adjudicata
 
 or not.
 

 “The commission is of the opinion that as between Xenia and Dayton there are two direct lines of transportation which should not be jeopardized or disturbed in their existence, which, as the record disclosed, have been rather precarious. We feel that an interurban railroad company is a vital asset
 
 *224
 
 to a community. The cities of Xenia and Dayton are not far apart and the communication between the two should be considerable. But owing to the competition of private automobiles, and the development of highways, the existence of interurban railways have been made rather precarious and consequently many of them have been before this commission, not only interurban but steam railroads, complaining about the service on account of patronage. If the situation between Xenia and Dayton were such that a diversion of traffic from the present existing interurban company would not tend to jeopardize its continued existence and operation, the commission, might take a different view of it, but as it is we feel that the margin between gain and loss in the operation of this company is so narrow that there ought not to be anything that would disturb and make a heavier burden upon this present existing operation. It is quite apparent that the bus line operating between Xenia and Dayton is operating at a loss but has operated in order to protect the interurban operation from destruction.
 

 “We feel that there is no occasion to permit the applicant to operate a through service by way of Oldtown and Osborn to Dayton in order to haul passengers that are taken on east of Xenia through to Dayton without the transfer at Xenia.” The commission then offered to grant an operation between Xenia and Osborn with restrictions, which the applicant refused to accept. Thereupon the commission sustained the motion to dismiss the application and counsel for applicant made the following statement:
 

 “Mr, Armstrong: May the record show then the.
 
 *225
 
 applicant is present and tenders proofs of publication and a map showing the route over which it proposes to operate, and all other exhibits required by statute; may the record also show that there are witnesses present and we will call their names, if the commission so desires, from Chillieothe, and all the intermediate points to and including Dayton, both termini, and the intermediate, towns between the termini whom we desire to call and are not permitted to call because of the action of the commission in sustaining the motion. The record may also show that the applicant was present and ready to proceed and only prevented from doing so by the sustaining of the motion, and to the sustaining of the motion the applicant enters its exception.
 

 “Chairman Geiger: You might as well have the applicant make a motion for rehearing.
 

 “Mr. Armstrong: I would rather make that in writing.
 

 “Mr. Landis: In support of the motion, counsel would like to present in the record as Protestant’s Exhibit B the certified order—
 

 “Mr. Armstrong: We object. If the gentlemen are going into the case we want to.
 

 “Chairman Geiger: I think there is enough in the record for the Supreme Court. Objection sustained. ’ ’
 

 Thereupon a formal order was entered dismissing the application.
 

 Counsel for plaintiff in error urge that the dismissal, if upon the defense of
 
 res judicata,
 
 was erroneous. They also urge that the commission erred in receiving evidence by the protestants as to convenience and necessity, and in refusing to the
 
 *226
 
 applicant the right to introduce testimony in' support of his case.
 

 "We do not consider the question of
 
 res judicata
 
 for the reason that the order of the commission plainly shows that the dismissal was not based upon the defense of
 
 res judicata.
 
 However, we are compelled to reverse the order of the commission upon the second ground urged.
 

 It is stated on behalf of the commission that under the provisions of the statute, Sections 614-87 and 614-91, General Code, which give the Public Utilities Commission certain discretion in the allowance of a hearing upon application for a certificate of public convenience and necessity, this action of the commission was justified. However, the provisions as to discretion of the Public Utilities Commission to grant or withhold a hearing do not in this instance apply. This was not an application for a new certificate, but was an application under Section 614-93 to extend the route under the old certificate. The application, therefore, had to be considered by the commission and governed in the same manner as in the case of an original application.
 
 Central Ohio Transit Co.
 
 v.
 
 Public Utilities Commission,
 
 115 Ohio St., 383, 154 N. E., 323. Here the commission did not act without a hearing. It held a hearing in which upon a question of fact it treated statements of counsel as to schedules of protestants’ operations in the territory involved as evidence, and then refused the applicant the right to put in its case. The tender shown by the record was adequate to raise the question squarely, stating that “ there are witnesses present * * * whom we desire to call
 
 *227
 
 and are not permitted to call because of the action of the commission in sustaining the motion.”
 

 The principle is elemental that, upon any hearing, each side of the controversy must be given an opportunity to present its case.
 

 The order of the Public Utilities Commission will be reversed, and the cause remanded to the commission for further proceedings according to law.
 

 Order reversed.
 

 Marshall, C. J., Jones, Day and Kinkade, JJ., concur.